IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JACQUELINE E. BOWEN, Individuals; and STEPHEN T. BOWEN, Individuals;<br><br>          Plaintiffs,<br><br>     vs.<br><br>ALLIED PROPERTY AND CASUALTY INSURANCE COMPANY, an Iowa Corporation; d/b/a Allied Insurance, a Nationwide Company;<br><br>          Defendant. | 4:11CV3163<br><br>MEMORANDUM AND ORDER |

The plaintiffs have moved to exclude the supplemental opinions of defendant's retained expert, Dr. Phillip E. Essay, regarding the following topics:

1) Jacqueline Bowen's history of neck and upper back pain;

2) the cause of Jacqueline Bowen's neck and upper back pain;

3) the medical necessity of the suprascapular nerve block treatment performed by Dr. Lindley on Jacqueline Bowen; and

4) the medical necessity of the opiate treatment received by Jacqueline Bowen after April 30, 2008.

(Filing No. 56). Having reviewed the evidence, the plaintiffs' motion will be granted in part and denied in part as discussed below.

FACTS OF RECORD

In this non-jury case, the court must decide the nature and extent of Jacqueline Bowen's injuries proximately caused by a motor vehicle collision that occurred on September 28, 2007; whether, and to what extent, the medical care she received was necessary for the treatment of her injuries; and the reasonable value of any medical care she is reasonably certain to need in the future.

Under the court's Final Progression Order, the plaintiffs' deadline for serving complete expert disclosures was March 30, 2012, and the defendant's expert disclosure deadline was May 28, 2012. (Filing No. 13). To that end, the plaintiffs disclosed Jacqueline Bowen's treating medical providers, David A. Lindley, D.O. and Pedro Perez, M.D. as medical experts; the defendant timely disclosed Phillip E. Essay, M.D. and John Goldner, M.D. as retained medical experts. (Filing No. 58-2).

The defendant deposed Dr. Perez on May 3, 2012 in Grand Island, Nebraska. (Filing No. 60-2). Dr. Perez provided medical treatments to Jacqueline Bowen for pain at St. Francis Hospital in Grand Island, Nebraska. Plaintiffs' counsel performed only a limited examination of Dr. Perez during the defense deposition, and he did not perform an additional deposition for use at trial.

The defendant's expert disclosures were served on May 29, 2012. (Filing No. 58-2). On May 30, 2012, the parties agreed, through counsel, to waive the issue of the unavailability of expert witnesses so that expert witness testimony could be presented by deposition at trial. (Filing No. 58-1 (Summerlin declaration), at CM/ECF p. 1, ¶ 3).

Plaintiffs' designated medical expert, Dr. Lindley, was deposed on June 14, 2012. (Filing No. 58-1 (Summerlin declaration), at CM/ECF p. 1, ¶ 4; filing no. 63-5 (Lindley depo.)). Dr. Lindley directly addressed the initial opinions disclosed by Drs. Essay and Goldner. With regard to the opinions of Dr. Essay, Dr. Lindley opined that Jacqueline Bowen's course of aggressive physical therapy, pulse radio frequency treatment, and spinal cord stimulation were reasonable and medically necessary.

Dr. Essay's deposition was scheduled for July 19, 2012. On June 20, 2012, plaintiffs' counsel advised defense counsel that the plaintiffs reserved the right to depose Dr. Perez following Dr. Essay's deposition, and he disclosed additional medical and prescription bills and St. Francis Hospital records for Jacqueline Bowen's medical care. (Filing No. 60-3).

In preparation for his deposition, Dr. Essay reviewed the deposition testimony of Dr. Perez, Dr. Lindley, and Dr. Goldner. On July 18, 2012, Dr. Essay advised defense counsel that he wanted to address some of the issues discussed in the Perez, Lindley, and Goldner depositions which may not have been directly addressed in his own report. (Filing No. 63-2, at CM/ECF p. 2). Defense counsel suggested delaying Dr. Essay's deposition so that a new or more detailed expert disclosure could be prepared and served. Plaintiffs' counsel objected to any supplemental disclosure, stating:

> We relied upon your expert witness disclosures which were filed in May to take the trial depositions of Ms. Bowen's treating physicians. . . . I will not agree that you can now supplement those disclosures to identify additional opinions from Dr. Essay that were not a part of his original disclosure. We do not have time to redepose Ms. Bowen's doctors (one of whom has now moved out of the country) to provide them with an opportunity to respond to any new opinions from Dr. Essay.

(Filing No. 63-2, at CM/ECF p. 1). But plaintiffs' counsel did agree to delay Dr. Essay's deposition, explaining defense counsel had agreed to file a motion seeking leave to supplement Dr. Essay's opinions so the issue could be decided by the court. (Filing No. 63-3, at CM/ECF p. 1).

Defense counsel served an additional expert witness report by Dr. Essay on July 20, 2012. (Filing No. 58-1 (Summerlin declaration), at CM/ECF p. 2, ¶ 5; filing no. 58-4). The plaintiffs have moved to strike the supplemental expert report, stating:

> Dr. Essay's initial expert witness report did not offer any opinion regarding the following topics: (1) Jacqueline Bowen's history of neck and upper back pain; (2) the causation of Jacqueline Bowen's neck and upper back pain; (3) the medical necessity of the suprascapular nerve block treatment performed by Dr. Lindley on Jacqueline Bowen; and (4) the medical necessity of the opiate treatment received by Jacqueline Bowen.

(Filing No. 58-3). The following compares Mr. Essay's initial and July 2012 reports.

The May 2012 initial report stated:    The July report stated:

| | |
|---|---|
| "Mrs.Bowen was injured in a motor vehicle accident on September 28, 2007.  The mechanism of injury and her ongoing pain complaint was consistent with cervicalgia secondary to whiplash syndrome. . . . Mrs. Bowen's ongoing pain is related to soft tissue/myofascial strain and injury to the posterior elements of the cervical spine." (Filing No. 58-3).  Dr. Essay's initial report does not discuss Jacqueline Bowen's pre-accident history of neck and back pain. (Filing No. 58-3). | Contrary to Drs. Perez' and Lindley's testimony, Jacqueline Bowen did have chronic neck and upper back pain prior to the September 28, 2007 accident. The report includes a detailed outline of Jacqueline Bowen's prior medical history.<br>**Note**: Based on the initial report, Dr. Essay was not asked to render causation opinions, but rather opinions regarding Jacqueline Bowen's "pharmacologic treatment, the use of spinal cord stimulation, the use of pulsed radiofrequency treatment, and the use of physical therapy as part of her treatment plan." (Filing No. 58-3, at CM/ECF p. 2). |
| The term "suprascapular nerve block" is not mentioned, although the report does state "the primary source of [plaintiff's] pain was myofascial and not neuropathic," and a "medial branch block" may assist in <u>diagnosing</u> neck and scapular pain.  (Filing No. 58-3). | As stated in the testimony of Dr. Perez, (see filing no. 62-2, at CM/ECF p. 19, (74:13-75:20), the suprascapular nerve block performed by Dr. Lindley may be used for diagnosis but was not a proven method for treating Jacqueline Bowen's injuries:  It was not medically necessary.  (Filing No. 58-4). |
| "Numerous medications were prescribed in an attempt to palliate her symptoms. . . .[T]hose medications were medically indicated and appropriate.  The majority of those medications have since been appropriately discontinued by Dr. Perez."  (Filing No. 58-3, at CM/ECF p.2). | As stated in the testimony of Dr. Perez, (see filing no. 62-2, at CM/ECF p. 15, (57:12-24), who began treating Jacqueline Bowen on October 12, 2010, long-term use of opiates for treatment of myofacial pain is not appropriate:  The opiates prescribed after April 30, 2008 were not medically necessary.  (Filing No. 58-4). |

Plaintiff's counsel responded:

We object to any opinions from Dr. Essay that go beyond the opinions expressed in his original report, since these opinions were not timely disclosed

4

> pursuant to the Court's progression schedule and since we are no longer able to get a response from Ms. Bowen's treating physicians.

(Filing No. 63-4, at CM/ECF p 1). Counsel for the plaintiffs explained that plaintiffs' expert witnesses are "now unavailable for deposition, and in any event, there is insufficient time to reconvene said depositions prior to trial." (Filing No. 58-1 (Summerlin declaration), at CM/ECF p. 2, ¶ 5).

Defense counsel did not move for leave to supplement Dr. Essay's initial opinions; plaintiffs' counsel did not move to strike those opinions prior to deposing Dr. Essay. Plaintiffs' counsel deposed Dr. Essay on August 1, 2012. Dr. Essay was questioned and provided testimony regarding both his initial and July expert disclosures. (Filing No. 58-5). Plaintiffs' counsel has not scheduled or attempted to schedule an in-person, video-teleconference, or telephone deposition of Dr. Perez following Dr. Essay's deposition, and he has expressed no intention of doing so. Although plaintiffs' counsel states plaintiffs' medical experts are no longer available for a deposition, he has provided no specific factual support for that statement. (Filing No. 61-1, at CM/ECF p. 2, ¶¶ 5-7).

Plaintiffs' counsel moved to exclude Dr. Essay's testimony regarding the July 2012 opinions one week before the start of trial.

## LEGAL ANALYSIS

Based on the parties' briefs, the court must consider the following issues:

1) Was the July 2012 disclosure of Dr. Essay's additional expert report untimely? If not, absent any evidence of prejudice to the plaintiffs, there is no basis for excluding Dr. Essay's opinions.

2) If the July 2012 disclosure was untimely, applying Rule 16 of the Federal Rules of Civil Procedure, is there a basis for extending the court-imposed expert disclosure

5

deadline? If so, absent any evidence of prejudice to the plaintiffs, Dr. Essay's July 2012 opinions will not be excluded.

3) If Dr. Essay's July 2012 expert disclosure was untimely and extending the disclosure deadline is not warranted under Rule 16, what is the applicable remedy or sanction under Rules 37 and 26; that is, should July 2012 opinions be excluded?

1. <u>Timeliness of the July 2012 Disclosure</u>.

Citing Rule 26(e) of the Federal Rules of Civil Procedure, the defendant claims it timely disclosed Dr. Essay's opinions in May of 2012, and the July 2012 expert disclosure was a timely supplement or correction to Essay's prior report.

Rule 26(e) requires a party to "supplement or correct" a prior disclosure based on information later acquired. It imposes a duty on the producing party to supplement information that is incorrect or incomplete. But it does not permit adding claims and issues which could have, and should have been included in the original report, and it "does not give the producing party a license to disregard discovery deadlines and to offer new opinions under the guise of the 'supplement' label." Allgood v. Gen. Motors Corp., 2007 WL 647496, at *3 (S.D. Ind. Feb. 2, 2007)(citing Beller ex rel. Beller v. United States, 221 F.R.D. 689, 695 (D.N.M. 2003)(Rule 26(e) "does not give license to sandbag one's opponent with claims and issues" which should have been raised earlier)). See also Lindner v. Meadow Gold Dairies, Inc., 249 F.R.D. 625, 640 (D. Hawai'i 2008); Palmer v. Asarco Inc., 2007 WL 2254343, at *4 (N.D. Okla. Aug. 3, 2007);

Under Rule 26(e), a party is under a duty to supplement "at appropriate intervals its disclosure under subdivision (a) if the party learns that in some material respect the information disclosed is incomplete or incorrect and if the additional and corrective information has not otherwise been made known to the other parties during the discovery process or in writing. . . . " Although parties are permitted to supplement expert disclosures, (Leviton Mfg. Co., Inc. v. Nicor, Inc., 2007 WL 1306759 *4 (D.N.M. April 20, 2007) (quoting Beller v. United States, 221 F.R.D. 696, 701 (D.N.M.2003)),

6

> A supplemental expert report that states additional opinions or rationales or seeks to "strengthen" or "deepen" opinions expressed in the original expert report exceeds the bounds of permissible supplementation and is subject to exclusion under Rule 37(c)(1). "To rule otherwise would create a system where preliminary [expert] reports could be followed by supplementary reports and there would be no finality to expert reports, as each side, in order to buttress its case or position, could 'supplement' existing reports and modify opinions previously given. This result would be the antithesis of the full expert disclosure requirements stated in Rule 26(a).

Cook v. Rockwell Int'l Corp., 2006 WL 3533049 *87 (D. Colo. Dec.7, 2006).

Having compared Dr. Essay's two reports, the court is convinced the July 2012 opinions are new or supplemental opinions, not corrections or explanations of Dr. Essay's former opinions. The defendant has failed to show that the opinions disclosed by Dr. Essay in July 2012 are based on facts that were unavailable before the May 2012 expert deadline. The opinions in Dr. Essay's July 2012 expert disclosure were untimely disclosed.

        2.      <u>Extending the Expert Disclosure Deadline: Good Cause under Rule 16</u>.

Pursuant to Rule 16(b)(4), a case management order setting progression deadlines "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "The primary measure of Rule 16's 'good cause' standard is the moving party's diligence in attempting to meet the case management order's requirements. . . . , [but the] 'existence or degree of prejudice to the party opposing the modification' and other factors may also affect the decision." Bradford v. DANA Corp., 249 F.3d 807, 809 (8th Cir. 2001). In general, the court will not consider prejudice, or the lack thereof, if the movant has not been diligent in meeting the scheduling order's deadlines. Sherman v. Winco Fireworks, Inc., 532 F.3d 709, 716-17 (8th Cir. 2008).

The movant's level of diligence and the degree of prejudice to the parties are both factors to consider when assessing if good cause warrants extending a case management deadline, with the movant's diligence being the first consideration and the extent of prejudice to either party considered only after a requisite threshold finding of due diligence. Sherman,

532 F.3d at 716-17; Marmo v. Tyson Fresh Meats, Inc., 457 F.3d 748, 759 (8th Cir. 2006). In all cases involving the interpretation and application of the Federal Rules of Civil Procedure, the court must fairly and with equal consideration to both parties balance the obligations and positions of the parties to promote the "just, speedy, and inexpensive determination of every action." Fed. R. Civ. P. 1; Marmo, 457 F.3d at 759.

The defendant has failed to show Dr. Essay was unable to examine the facts and records underlying his July 2012 opinions prior to the May 2012 expert disclosure deadline. The defendant has not shown due diligence sufficient to justify extending the expert deadline set in the court's progression order.

   3. <u>Sanction for Untimely Disclosure of Expert Testimony:  Rules 26 and 37</u>.

A Rule 26 disclosure by a retained witness, or person "specially employed to provide expert testimony in the case whose duties as an employee of the party regularly involve giving expert testimony," must "be accompanied by a written report prepared and signed by the witnesses." Fed.R.Civ.P. 26(a)(2)(B).  Failure to timely and adequately disclose an expert witness as required by rule 26(a)(2)(B) can justify exclusion of testimony at trial. Fed.R.Civ.P. 37(c)(1).  Crump v. Versa Products, Inc.  400 F.3d 1104, 1110 (8th Cir. 2005)(upholding district court's decision to allow testimony of undisclosed experts where opposing party provided basis for expert opinion's during discovery and made experts available for deposition).

But the failure to timely comply with Rule 26(a) does not automatically lead to the exclusion of evidence. See Doe v. Young, 664 F.3d 727, 734 (8th Cir. 2011); Wegener v. Johnson, 527 F.3d 687, 692-93 (8th Cir. 2008) (citing cases).  The court must undertake a balancing test to determine if the deficient disclosure is either substantially justified or harmless and, therefore, whether exclusion of the evidence is a proper remedy.  Id.  The Eighth Circuit has consistently warned against discovery sanctions which result in the dismissal of claims. See Dunning v. Bush, 536 F.3d 879, 890 (8th Cir. 2008) ("a dismissal

sanction is not warranted, except in cases of egregious conduct. The district court should consider a lesser sanction, if any, before imposing one that resulted in dismissal of a claim). But see [White v. Howmedica, Inc., 490 F.3d 1014, 1016 (8th Cir. 2007)](#) (excluding testimony of undisclosed expert leading to dismissal of the products liability case on summary judgment).

Dr. Essay's July 2012 report provides three new opinions: 1) Jacqueline Bowen had pre-existing chronic back and neck problems and injuries; 2) Suprascapular nerve block treatments were not medically necessary; and 3) Jacqueline Bowen's use of opiates after April 30, 2008 was improper and not medically necessary.

Based on Dr. Essay's initial report, as of May 2012, Dr. Essay was not asked to render a causation opinion or an opinion regarding any underlying pre-existing condition. From the record, it appears that task on behalf of the defendant was assigned to Dr. Goldner. There is nothing of record indicating that absent Dr. Essay's causation testimony, defendant will be unable to defend this case. Under these circumstances, Dr. Essay will not be permitted to testify that all or part of Jacqueline Bowen's chronic neck and upper back pain existed prior to the September 28, 2007 accident.

Dr. Essay's initial report stated Jacqueline Bowen's medication use, as reflected in the medical records, was appropriate and medically necessary. His July 2012 appears to directly contradict that opinion, at least as to opiates prescribed and used after April 30, 2008. Dr. Essay will not be permitted to testify that opiate prescriptions were not medically necessary after April 30, 2008.

As to the last topic, whether the suprascapular nerve block performed by Dr. Lindley was medically necessary, it is unclear from the record whether this topic was actually touched in Dr. Essay's initial disclosure. It appears Dr. Essay agrees with Dr. Perez on this topic. Therefore, even assuming the plaintiffs' experts are unavailable, they will not be harmed by admitting this testimony at trial. Finally, plaintiffs' counsel was afforded a full

opportunity to depose Dr. Essay regarding all his opinions, including the issue of using suprascapular nerve blocks as a treatment modality for Jacqueline Bowen's injury. Dr. Essay will be permitted to testify regarding the propriety and necessity of suprascapular nerve blocks for treating Jacqueline Bowen's injuries.

Accordingly,

IT IS ORDERED that the plaintiffs' motion to strike the July 2012 expert opinions of Dr. Phillip E. Essay, (filing no. 56) is granted in part and denied in part as set forth herein.

August 13, 2012.

BY THE COURT:

s/ *Cheryl R. Zwart*
U.S. Magistrate Judge