IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| JACQUELINE E. BOWEN, an individual, and STEPHEN T. BOWEN, an individual, | ) ) ) ) | |
| Plaintiffs, | ) ) | 4:11CV3163 |
| v. | ) ) ) | |
| ALLIED PROPERTY AND CASUALTY INSURANCE COMPANY, an Iowa Corporation, d/b/a Allied Insurance, a Nationwide Company, | ) ) ) ) ) ) | **MEMORANDUM AND ORDER** |
| Defendant. | ) ) | |

    This matter is before the court on the plaintiffs' motion for attorneys' fees and costs (filing 81), filed pursuant to Neb. Rev. Stat. § 44-359[1] and this court's memorandum and order (filing 80) finding in favor of plaintiffs Jackie and Stephen Bowen ("the Bowens") in the amount of $250,000 under an underinsured motor vehicle benefits provision of an insurance policy issued by defendant Allied Property and Casualty Insurance Company ("Allied") to the Bowens. The Bowens request $130,063.50 in attorneys' fees for the merits litigation, $19,667.50 in attorneys' fees for preparation of the fee application, and $7,088.44 in costs, for a total of $156,819.44. (Filing 82 at CM/ECF pp. 14; Filing 82-1 at CM/ECF pp. 8-9.)

    Allied does not dispute that the Bowens are entitled to attorneys' fees under Neb. Rev. Stat. § 44-359, but argue that the amount of fees requested is unreasonable because

---

    [1]Neb. Rev. Stat. § 44-359 provides in part: "In all cases when the beneficiary . . . brings an action upon any type of insurance policy . . . against any company . . . doing business in this state, the court, upon rendering judgment against such company, . . . shall allow the plaintiff a reasonable sum as an attorney's fee in addition to the amount of his or her recovery, to be taxed as part of the costs."

(1) the number of hours billed is excessive; (2) the hourly rates claimed exceed the customary market rate; (3) counsels' billing records are vague and not itemized; (4) costs cannot be recovered without submitting a verified bill of costs pursuant to NECivR 54.1.

> In this diversity case, we apply the choice of law rules of Nebraska, the forum state. *See Ferrell v. West Bend Mut. Ins. Co.*, 393 F.3d 786, 796 (8th Cir.2005). Under Nebraska law, attorney fees are procedural and therefore governed by the law of the forum state. *Neb. Nutrients, Inc. v. Shepherd*, 261 Neb. 723, 626 N.W.2d 472, 518 (2001); *see also City of Carter Lake v. Aetna Cas. and Sur. Co.*, 604 F.2d 1052, 1062 (8th Cir.1979) (applying Nebraska law and granting attorney fees to a contract governed by Iowa law because attorney fees are procedural).

*Schaffart v. ONEOK, Inc.*, 686 F.3d 461, 475 (8th Cir. 2012). *See also Weitz Co. v. MH Washington*, 631 F.3d 510, 528 (8th Cir. 2011) ("In a diversity action, state law governs the availability of attorney's fees where no conflicting federal statute or court rule applies."); *Ferrell v. West Bend Mut. Ins. Co.*, 393 F.3d 786, 796 (8th Cir. 2005) (whether attorney-fee issue is "substantive" for *Erie* purposes is separate question from whether attorney-fee issue is "substantive" or "procedural" for purposes of choice-of-law analysis). Thus, I shall apply Nebraska law in determining a proper and reasonable attorney fee.

"The determination of attorney fees awarded pursuant to § 44-359 is a matter within the discretion of the trial court." *Koehler v. Farmers Alliance Mut. Ins. Co.*, 566 N.W.2d 750, 755 (Neb.1997). "There is no presumption of reasonableness placed on the amount offered by the party requesting fees." *Young v. Midwest Family Mut. Ins. Co.*, 753 N.W.2d 778, 783 (Neb. 2008). To determine a reasonable award of attorneys' fees under Nebraska law,

> it is necessary for the court to consider the nature of the litigation, the time and labor required, the novelty and difficulty of the questions raised, the skill required to properly conduct the case, the responsibility assumed, the care and diligence exhibited, the result of the suit, the character and standing of the attorney, and the customary charges of the bar for similar services.

*Young*, 753 N.W.2d at 783.

As a general matter, and considering the above factors, the amount involved in this contract dispute regarding the payment of underinsured motorist benefits—$250,000—warranted a fair amount of time and effort by the skilled, thorough, and well-respected plaintiffs' attorneys in this case. (Filing 82-1, Aff. Gene Summerlin; Filing 82-2, Qualifications of Plaintiffs' Counsel.)  As Allied points out, the subject matter of this case was not complex, liability for the underlying rear-end car accident was admitted, and the only issue to be resolved in the one-day non-jury trial was the amount of damages. (Filing 83, Def.'s Br. Opp'n Pls.' Mot. Atty. Fees at CM/ECF p. 13.) However, Allied raised issues that made this initially routine contract case more complex and time-consuming, such as asserting that Jackie Bowen suffered from a pre-existing medical condition and that much of her medical treatment was unnecessary, as well as attempting to quash an expert deposition (Filing 44), to exclude evidence of Stephen Bowen's loss-of-consortium claims (Filing 52), and to supplement one of its expert's opinions outside the expert disclosure deadline and shortly before trial (Filing 56).

The plaintiffs obtained excellent results. Allied offered to confess judgment in the amount of $100,001. (Filing 82-6.) The court determined the contract covered loss-of-consortium claims, determined that total damages exceeded $350,000, and awarded full policy limits in the amount of $250,000. (Filing 80, Findings of Fact & Conclusions of Law.) "Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified." *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983).

Allied's specific objections to the plaintiffs' application for attorneys' fees and costs are addressed below.

### A.  Number of Hours Billed

The Bowens request $149,731.00 in attorneys' fees for 701.1 hours of work performed by three lawyers and one paralegal at hourly rates ranging from $95 for the paralegal and from $175 to $275 for the lawyers, as summarized below:

3

| **Timekeeper** | **Rate** | **Hours** | **Subtotal** |
|---|---|---|---|
| Gene Summerlin (Atty) | $275 | 331.1 | $91,052.50 |
| Andrew Weeks (Atty) | $175 | 242.5 | $42,437.50 |
| Henry Wiedrich (Atty) | $210 | 35.9 | $7,539.00 |
| Vern Schulte (Paralegal) | $95 | 91.6 | $8,702.00 |
| **Totals** | | 701.1 | $149,731.00[2] |

In addition to written discovery, this case involved the preparation for and taking of six depositions, including four expert witnesses whose depositions were conducted in Grand Island, Lincoln, and Omaha, Nebraska, as well as in Green Bay, Wisconsin. (Filings 21, 23, 24, 25, 26, 36, 38, 40, 41, 49.) This case also required the parties to spend significant time briefing various issues, especially in the discovery stage. For example, following the deadline in the pretrial progression order for Rule 35 exams, Allied filed a motion to extend the progression order and requested that Jackie Bowen submit to a Rule 35 exam. (Filing 30.) The Bowens objected and fully briefed the issue. (Filing 34.) After the Bowens noticed the deposition of Dr. Essay, Allied filed a motion to quash the deposition and sought to disclose new opinions. (Filing 44.) Following Magistrate Zwart's ruling on the disclosure of additional expert opinions, Allied filed objections and the parties submitted briefs related to the objections. (Filings 67, 69.) Allied also filed a motion to exclude evidence of loss of consortium, an issue that was fully briefed by the parties. (Filings 52, 53, 54, 64, 68.) Following trial, the parties submitted post-trial briefs, reply briefs, and the application for attorneys' fees and costs now before the court. (Filings 75, 76, 78, 79.)

The plaintiffs have filed declarations by Jefferson Downing ("Downing") and Peter Wegman ("Wegman"), two Lincoln attorneys with significant experience in personal

---

[2]Of the total time spent on this litigation, Plaintiffs' attorneys and paralegal spent 612.2 hours conducting discovery, in trial, and preparing numerous briefs, totaling $130,063.50, and 88.9 hours preparing the fee application for a total of $19,667.50.

4

injury litigation, in support of the amount of hours spent on this litigation. (Filing 82-7, Decl. Jefferson Downing ¶ 3; Filing 82-8, Decl. Peter Wegman ¶ 3.) Downing and Wegman are equity participants in long-time, reputable Lincoln firms and are familiar with the Lincoln and Omaha legal markets, the Bowen litigation, and the work product of Bowen's counsel. (Filing 82-7 ¶¶ 2, 4-8; Filing 82-8 ¶¶ 2, 6-8.) In both Downing's and Wegman's opinions, the time Plaintiffs' attorneys devoted to this litigation was reasonable given the issues presented, the quality of legal services provided, and the results obtained by the firm. (Filing 82-7 ¶¶ 14-15; Filing 82-8 ¶¶ 13-14.)

Allied has filed declarations and affidavits from three experienced and well-respected lawyers who primarily perform insurance defense work. (Filing 84-1, Decl. Robert Lannin; Filing 84-2, Aff. Randall Goyette; Filing 84-3, Aff. Brian Nolan.) These lawyers generally state that the rates charged by Plaintiffs' counsel are too high and the number of hours spent on this case was excessive. Specifically, Allied argues that the hours spent on researching and preparing the complaint, initial disclosures, general discovery, depositions, briefing, and attorneys' fee application were unreasonable.[3] (Filing 83 at CM/ECF pp. 6-14.)

"A court may reduce attorney hours, and consequently fees, for inefficiency or duplication of services in cases where more than one attorney is used." *A.J. by L.B. v. Kierst, 56 F.3d 849, 864 (8th Cir. 1995)*. While the court is obligated to review the records

---

[3]Robert Lannin's declaration claims that, according to counsels' time statements, Plaintiffs' counsel spent "slightly less than 30 hours" on drafting, filing, and serving the complaint, 24 hours on initial disclosures, 35 hours on responses to written discovery, 125 hours on post-trial briefing, and 88 hours on the attorneys' fee application. (Filing 84-1 ¶ 11.) The declaration asserts that the complaint should have taken 3 hours to prepare and file, initial disclosures should have taken 10 hours, responses to written discovery should have taken 15 hours, post-trial briefing should have taken 62.5 hours, and preparation of the attorneys' fee application should have taken 22 hours. (Filing 84-1, Decl. Robert Lannin ¶ 11.) Allied contends in its brief that work on initial disclosures should have consisted of no more than 4 hours of paralegal time and 1 hour of attorney time (Filing 83 at CM/ECF p. 9); discovery responses should have taken no more than 10 hours (*Id.*); post-trial briefing should have taken no more than 25 hours (*Id.* at CM/ECF p. 12); and the application for attorneys' fees should have taken 22 hours (*Id.* at CM/ECF p. 13).

submitted by counsel, verify the accuracy of the records, and deduct excessive, redundant, and otherwise unnecessary work, *U & I Sanitation v. City of Columbus*, 112 F. Supp. 2d 902, 904 (D. Neb. 2000), it is not necessary for the court to parse through counsels' billing records to tally the hours spent on each and every pleading, discovery, research, and briefing task to assess whether the time spent on each task meets some amorphous standard of reasonableness for that individual piece of work. *See Aston v. Sec'y of Heath & Human Svs.*, 808 F.2d 9, 11 (2nd Cir. 1986) (in context of attorneys' fees application in social security appeal, while counsel "probably wasted some time in the drafting of pleadings and memoranda . . . the district court has broad discretion in this area. . . . The district court need not have scrutinized each action taken or the time spent on it."); *Jenkins v. General Collection, Co.*, 2009 WL 3631014, at *3 (D. Neb. Oct. 26, 2009) (in case brought under Fair Debt Collection Practices Act and Nebraska Consumer Protection Act, "[t]he Court will not parse through the voluminous billings in an attempt to determine the reasonableness of each and every entry . . . ."); *Colegrove v. Barnhart*, 435 F. Supp. 2d 218, 221 (W.D.N.Y.2006) (court need not "scrutinize each action taken or the time spent on it when determining what is reasonable" and may exercise its discretion "simply to apply a reasonable percentage reduction as a practical means of trimming fat from a fee application") (internal quotation marks & citation omitted).

While I am not persuaded by most of Allied's objections[4] to the amount of hours billed by Plaintiffs' counsel for various tasks, there are some exceptions for which deductions will be made:

---

[4]Specifically, I reject Allied's argument that the amount of time spent on expert depositions of physicians was excessive, as these depositions involved conflicting opinions by medical "experts," and the depositions were used at trial in lieu of live testimony. Further, I am not persuaded by the estimations provided by Allied's affiants as to the time Plaintiffs' counsel should have spent performing various tasks, as Allied's affiants mainly practice insurance and personal-injury defense, and it is not clear that their time estimates are applicable to Plaintiffs' counsel, who had the burden of proof and were faced with a vigorous defense strategy.

6

(1) 22 hours billed primarily by a paralegal ($2,778.00) for review of deposition testimony for possible amendments[5] is unreasonable because such amendments are to be made by the deponent, not the attorney. *See* Fed. R. Civ. P. 30(e).

(2) Plaintiffs request attorneys' fees for 67 hours of preparation of the post-trial brief (Filing 82-4 at CM/ECF pp. 7-8) and 65.1 hours for the reply brief (*Id*. at CM/ECF pp. 8-10). Both briefs (Filings 76, 78) were 25 pages long and did not involve overly complex legal issues, but they were well-written and contained thorough descriptions of the facts with accurate citations to the trial transcript. Under these circumstances, I conclude that 40 hours for preparation of the initial trial brief was reasonable. Because the reply brief (Filing 78) generally involved discussion of the same facts that were laid out in the post-trial brief (Filing 76), 20 hours of billable time was appropriate. Therefore, I shall reduce the plaintiffs' fee request by $15,862 for 72.1 excess hours of post-trial briefing performed by three attorneys at a blended[6] hourly rate of $220.[7]

---

[5]Plaintiffs do not object to Allied's summary and calculation of the time spent performing this task. (Filing 83 at CM/ECF pp. 9-10 (Def's Br.); Filing 82-3 (Billing Records).) Also, because the billing records list several tasks in each daily entry, it is not possible to discern how much time was spent on each task performed that day. Therefore, I shall deduct the full amount billed for that day.

[6]The blended hourly rate is the average of the three attorneys' hourly rates.

[7]*See, e.g., Glenn v. Astrue*, 2011 WL 2135454, at *3 (W.D. Mo. May 31, 2011) (48.3 hours to prepare brief in social security appeal reasonable when stakes were high, administrative record was abnormally long, case was medically complex, brief made five arguments, quality of work was noticeably better than what court typically received from plaintiffs' counsel in similar cases, and client received excellent outcome); *Vollenweider-Leos v. Hartford Life & Acc. Ins. Co.*, 2010 WL 457743, at *6 (N.D. Iowa Feb. 1, 2010) (amount of fees requested for research and writing was "slightly excessive" and would be reduced by 5 percent, but "Attorneys are expected to conduct diligent, thorough research. Devoting time to research and understand the cases Defendant cited in its brief is a reasonable task, although the time expended on it is slightly higher than it should be. The

7

(3) The plaintiffs request attorneys' fees for 88.9 hours ($19,667.50) spent by two lawyers for preparation of the application for attorneys' fees and expenses. (Filing 82-5 at CM/ECF pp. 2-4.) Given that Plaintiffs' counsel are experienced[8] in filing such applications in federal court, and that Allied has filed affidavits[9] indicating that 88.9 hours is excessive in this community for the preparation of a fee application in a straight-forward case like this one, attorneys' fees shall be awarded for 20 hours for this task. Therefore, I shall reduce the plaintiffs' request for fees for preparation of the fee application by $15,502.50 for 68.9 excess hours spent by two attorneys at a blended hourly rate of $225.

(4) A 15% reduction in overall fees requested shall be applied to account for duplication of effort and billing for clerical tasks.[10]

---

court . . . finds that Plaintiffs' briefs did not contain superfluous arguments or facts. Stated another way, the court finds that the slightly high amount of time spent researching and writing is reflected in the thoughtful and thorough composition of Plaintiff's briefs and arguments.")

[8]*See El-Tabech v. Clarke*, No. 4:04CV3231 (D. Neb. 2004) (Filings 191, 193, 194, 233, 234, 235, 270, 271, 272, 278); *American Simmental Ass'n v. Coregis Ins. Co.*, No. 4:98CV3327 (D. Neb. 1998) (Filings 136, 137).

[9]Filing 84-1 at CM/ECF p. 6 (stating that 88 hours for preparation of fee application is not "a reasonable expenditure, if in fact contemporaneous time records had been kept and reviewed monthly. In my opinion, a reasonable professional time for submission of a fee motion should be one-fourth of the requested hours"); Filing 84-3 at CM/ECF pp. 4-5 ($19,667.50 in fees for preparing fee application in this case is "an excessive and unreasonable amount of time to spend on an eighteen page brief and a few Affidavits").

[10]*See* Filing 82-3 at CM/ECF pp. 4-16 (counsels' billing records for this case include repetitive billing at a paralegal rate for clerical tasks such as opening the case in the court's electronic filing system; preparing correspondence; filing and docketing; issuing summons; revising the civil cover sheet; gathering, delivering, assembling, and organizing materials; and scheduling videography). "In calculating attorneys' fees, 'purely clerical or secretarial tasks should not be billed at a paralegal rate, regardless of who performs them.'" *Murray v. Collections Acquisitions, LLC*, No. 8:11CV301, 2012

8

The deductions discussed above total $34,142.50 for 163 hours of excess work, plus an additional 15% overall reduction:

|  | HOURS | FEE AMOUNT |
|---|---|---|
| **Initial Request** | **Merits**:   612.2 hours<br>**Fee App**:    88.9 hours<br>                       701.1 hours | $130,063.50<br>$19,667.50<br>$149,731.00 |
| **Deduction for Excess Billing** | **Merits**:   – 94.1 hours<br>**Fee App**:  – 68.9 hours<br>                       – 163 hours | – $18,640.00<br>– $15,502.50<br>– $34,142.50 |
| **Subtotal** | 538.1 hours | $115,588.50 |
| **Total After 15% Additional Deduction for Duplication & Clerical Tasks** | 457.38 hours | $98,250.22 |

In light of the high quality of legal services provided and the excellent results obtained by Plaintiffs' counsel—but taking into account excess and inappropriate billing in the areas discussed above—I conclude that the expenditure of 457.38 billable hours on the merits litigation and attorneys' fee application is fair and reasonable.[11]

---

WL 2577211, at *2 (D. Neb. July 3, 2012) (quoting *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 288 (1989)). The defendants have filed evidence establishing that the customary practice in the local market is that such secretarial tasks would not be billed at a paralegal rate and "would simply be considered office overhead." (Filing 84-3 at CM/ECF p. 4.) *Emery v. Hunt*, 272 F.3d 1042, 1048 (8th Cir. 2001) ("Plaintiffs are not entitled to reimbursement for expenses that are part of normal office overhead in the community.")

[11]As I stated in a previous case involving attorneys' fees under § 44-359, "This does not mean I agree that every hour billed was necessary and customary. This finding means that when the total number of hours is considered in relationship to the nine factors set out by the Nebraska Supreme Court, the total number of hours billed is within a range that a reasonably prudent person would find acceptable in the relevant market." *Johnson Intern. Co. v. Jackson Nat'l Life Ins. Co.*, 812 F. Supp. 966, 984 n.24 (D. Neb. 1993).

**B. Hourly Rates**

Allied challenges the hourly rates of Plaintiffs' attorneys and paralegal, arguing that the rates are excessive for the Lincoln, Nebraska, market; that the attorneys may not actually have billed Plaintiffs at those rates because the lawyers may have taken the case on a contingency basis; and attorney Gene Summerlin's claimed hourly rate was much less in a prior prisoner civil rights case, *El-Tabech v. Clarke*, 616 F.3d 834 (8th Cir. 2010).

The marketplace is the district court's guide in determining what constitutes a "reasonable" hourly rate, along with the court's own knowledge of prevailing market rates. *Missouri v. Jenkins*, 491 U.S. 274, 285 (1989); *Hanig v. Lee*, 415 F.3d 822, 825 (8th Cir. 2005) ("When determining reasonable hourly rates, district courts may rely on their own experience and knowledge of prevailing market rates."). This court has repeatedly determined that hourly rates similar to those charged by the Bowens' attorneys are reasonable in the Omaha and Lincoln, Nebraska, markets.[12] Further, the Bowens'

---

[12]*See, e.g.*, *Doe v. State of Nebraska*, No. 8:09CV456, 2012 WL 6681855 (D. Neb. Dec. 21, 2012) ($300 and $225 hourly rates for attorneys were consistent with prevailing market rates in Lincoln and Omaha, Nebraska); *Riley v. Sun Life & Health Ins. Co.*, No. 8:09CV303, 2012 WL 182245, at *7 (D. Neb. Jan. 20, 2012) (Smith Camp, C.J.) (average hourly rates of $345, $290, $212, and $185 for plaintiff's attorneys in ERISA case were reasonable for the Omaha, Nebraska, market in comparable cases); *Hyke v. Ohio Nat. Life Ins. Co.*, No. 8:10CV263, 2011 WL 6260433 (D. Neb. Dec. 15, 2011) (Smith Camp, J.) (rate of $225 per hour reasonable on claim against life insurance company); *Kappa Ethanol, LLC v. Affiliated FM Ins. Co.*, No. 7:05CV5010, 2010 WL 2399507 (D. Neb. June 11, 2010) (Strom, J.) (out-of-state counsel blended rate of $385.27 per hour and local counsel rate of $240 per hour reasonable on claim against insurance company); *Kellogg v. Nike, Inc.*, No. 8:07CV70, 2010 WL 323994 (D. Neb. Jan. 20, 2010) (Bataillon, C.J.) (hourly attorney billing rates of $175 to $335 were reasonable in patent case in Omaha, Nebraska, market); *Tierone Bank v. Hartford Cas. Ins. Co.*, No. 4:08CV3156, 2009 WL 4800578 (D. Neb., Dec. 8, 2009) (Kopf, J.) (local counsel rate of $240 per hour reasonable); *Sheriff v. Midwest Health Partners, P.C.*, No. 8:07CV475, 2009 WL 2992513, at *10 (D. Neb. Sep. 16, 2009) (Thalken, M.J.) (in Title VII action, Omaha attorneys' hourly rates of between $200 and $300 appeared consistent with hourly rates in the relevant market based on evidence in the record); *Chief Automotive Systems, Inc.*

attorneys and paralegal have impressive legal backgrounds and a significant amount of litigation experience. (Filing 82-1, Decl. Gene Summerlin; Filing 82-2, Descriptions of Counsels' Experience.)

I am not persuaded by Allied's argument that because the Bowens may have entered into a contingency-fee agreement with their attorneys, they did not actually pay the fees billed, making the fees requested unreasonable. First, there is no evidence of a contingency-fee agreement between the Bowens and their attorneys. Moreover, even if there were such an agreement between the parties, it would have no bearing on the award of attorneys' fees. *Quigley v. Winter*, 598 F.3d 938, 956 (8th Cir. 2010) ("'The attorney's fees provided for in a contingent-fee agreement is not a ceiling upon the fees recoverable.'") (quoting *Blanchard v. Bergeron*, 489 U.S. 87, 96 (1989)); *see also Ruby Co-op. Co. v. Farmers Elevator Mut. Ins. Co.*, 250 N.W.2d 239, 243 (Neb. 1977) ("The allowance of a reasonable attorney's fee under section 44-359, R.R.S.1943, has no relation to the fee contracted for on a contingency basis.").

Finally, Allied's argument that attorney Gene Summerlin requested a much lower hourly rate in the *El-Tabech* prisoner civil rights case is irrelevant because at the time that case was litigated, "[u]nder the PLRA[13], the recoverable hourly rate [was] capped at $138.00." *El-Tabech v. Clarke*, No. 4:04CV3231, 2011 WL 1979847, at *3 (D. Neb. May 20, 2011) (on remand from Eighth Circuit Court of Appeals).

Therefore, I conclude that the hourly rates of the Bowens' attorneys and paralegal—Gene Summerlin ($275), Andrew Weeks ($175), Henry Wiedrich ($210), Vern

---

*v. Asterino*, Nos. 4:97CV3017 & 8:07CV58, 2008 WL 151271, at *4 (D. Neb. Jan. 11, 2008) (Kopf, J.) (awarding attorneys' fees as part of civil contempt sanctions and finding that hourly rates of $115 to $295 were within range lawyers practicing in this court charge for work of similar complexity); *Developmental Services of Nebraska, Inc. v. City of Lincoln*, No. 4:04CV3272, 2007 WL 1959244, at *1 (D. Neb. July 2, 2007) (Kopf, J.) (awarding $250,000 in attorneys' fees in Fair Housing Act case after reducing hourly rates to between $125 and $300 to bring in line with relevant market for lawyers of comparable skill and experience).

[13]The "PLRA" refers to the Prison Litigation Reform Act.

11

Schulte (Paralegal, $95)—are fair and reasonable and represent the market rates for this area, given the level of expertise, skill, and experience of Plaintiffs' counsel and the nature of this particular case.

### C.  Vagueness of Billing Records

Noting unspecific "[v]ague billing entries . . . scattered throughout Plaintiffs' timesheets" and the evils of "block billing,"[14] Allied contends a reduction of fees is necessary. I conclude that any vagueness in counsels' billing records was fairly taken into account by the above 15% reduction in hours claimed for duplication of effort and clerical tasks. I have also accounted for counsels' use of "block billing" by deducting entire days of billing time when I could not determine how much time was spent on a particular day for tasks that were improperly billed. (*See supra* note 5 (deducting 22 hours billed for review of deposition testimony).)

### D.  Recovery of Costs

---

[14]I interpret "block billing" to mean a paragraph containing multiple tasks with only one increment of time noted (like 3.20 hours) and one amount billed ($304.00) for the collection of listed tasks, as in the example below:

> 04/27/2012
> VMS        Preparation of J. Bowen deposition amendments. Correspondence from G. Summerlin re: Dr. Swift records. Review medical records for same. Multiple teleconferences with Internal Medical Associates re: same. Correspondence to G. Summerlin re: same. Correspondence from G. Summerlin re: Dr. Cannela records. Review documents re: same. Teleconference with IMA re: same. Correspondence to G. Summerlin re: same.

(Filing 82-3 at CM/ECF p. 18.)

The Bowens request $7,088.44 for photocopies, postage, mileage, expert consultation and deposition fees, court reporter costs, and business travel, lodging, and meals. (Filing 82-1 at CM/ECF p. 7; Filing 82-3 at CM/ECF pp. 27-28; Filing 82-4 at CM/ECF p. 10.) Of this requested amount, $3,500.00 was "the amount of fees paid to the Bowens' and to Allied's expert witnesses." (Filing 85 at CM/ECF p. 11; Filing 82-3 at CM/ECF p. 28.)

As stated above, Neb. Rev. Stat. § 44-359 allows the plaintiff to recover "a reasonable sum as an attorney's fee in addition to the amount of his or her recovery, to be taxed as part of the costs." Both Nebraska and federal law allow for the recovery of "costs" by a prevailing plaintiff. *See* Neb. Rev. Stat. § 25-1708 ("costs shall be allowed of course to the plaintiff . . . upon a judgment in favor of the plaintiff, in actions for the recovery of money only"); Fed. R. Civ. P. 54(d)(1) ("costs . . . should be allowed to the prevailing party"); 28 U.S.C. § 1920 (judge or clerk of court may tax costs for fees of marshal or clerk, transcripts, printing, witnesses, photocopies, docket fees, and court-appointed experts).

Further, reasonable out-of-pocket "expenses" (or "non-taxable costs") may be awarded if they are reasonable, necessary, and of the kind normally charged to clients in the relevant economic market. *Pinkham v. Camex, Inc.*, 84 F.3d 292, 295 (8th Cir. 1996) (reasonable out-of-pocket litigation expenses, such as charges for long-distance and fax, messenger, and express mail services, may be included in attorneys' fee award); *Grand Electric, LLC v. Int'l Brotherhood of Elec. Workers Local 265*, No. 4:09CV3160, 2011 WL 6740408 (D. Neb. Dec. 22, 2011) (Urbom, J.) (including litigation costs and expenses in award of attorneys' fees and noting that mischaracterization of expenses as "costs" did not preclude expenses from being included in attorneys' fee award); *Kaapa Ethanol, LLC v. Affiliated FM Ins. Co.*, No. 7:05CV5010, 2010 WL 2399507 (D. Neb. June 11, 2010) (Strom, J.) (costs and expenses included in attorneys' fee award under Neb. Rev. Stat. § 44-359); *Sirois v. Superior Pub. Co., Inc.*, No. 4:04CV3064, 2005 WL 1459388, at *2 (D. Neb. June 20, 2005) (Kopf, J.) (attorney fee award may contain expenses to the extent such expenses would normally be paid by fee-paying clients in the relevant market); *Bowlin v. Montanez*, No. 4:04CV3218, 2005 WL 1389182 (D. Neb. June 13, 2005) (Smith Camp, J.) (awarding "non-taxable expenses" for travel and lodging related to depositions);

13

*ACLU Neb. Foundation v. City of Plattsmouth*, 199 F. Supp. 964 (D. Neb. 2002) (Kopf, C.J.) (reasonable and necessary expenses of filing fee, development of photographs, and mileage awarded as part of attorneys' fee award).

The Nebraska Supreme Court has specifically allowed recovery of a law firm's costs and expenses under section 44-359. *See Young v. Midwest Family Mut. Ins. Co.*, 753 N.W.2d 778, 784 (Neb. 2008) (affirming award of costs for filing fee, subpoena and service fees, deposition fees, and witness fees); *National American Ins. Co. of Nebraska, Inc. v. Continental Western Ins. Co.*, 502 N.W.2d 817, 825 (Neb. 1993) (award of fees for photocopying was proper under § 44-359); *Craig v. Farmers Mut. Ins. Co. of Nebraska*, 476 N.W.2d 529, 535 (Neb. 1991) (affirming award of attorney fees which included air travel expenses incurred by the attorney). However, allowable expenses do not include expert witness fees. *Young*, 753 N.W.2d at 784 (district court erred in awarding $5,123.17 to plaintiffs for expert witness fees and other items of expense which are not taxable as court costs and not recoverable under § 44-359).

The Bowens have presented evidence that the costs and expenses claimed are routinely charged to clients in litigation matters in the Lincoln and Omaha legal markets. (Filing 82-7, Decl. Jefferson Downing ¶¶ 17-21; Filing 82-8, Decl. Peter Wegman ¶¶ 17-21.) The declarations filed by Allied regarding the reasonableness of the plaintiffs' fee request are either silent on the issue of costs and expenses (Filing 84-2, Decl. Randall Goyette; Filing 84-3, Aff. Brian Nolan) or state that they "have no objection to the reasonableness of the requested cost or disbursements reimbursement." (Filing 84-1, Decl. Robert Lannin ¶ 14.)

Therefore, subtracting the expert witness fees ($3,500.00) that are not taxable as court costs under section 44-359, *Young*, 753 N.W.2d at 784, from the total amount of costs and expenses requested ($7,088.44), I shall include in the plaintiffs' attorneys' fee award $3,588.44 in reasonable and necessary costs and expenses, as there is undisputed evidence that they are of the kind normally billed to clients in the relevant economic market. Adding the $98,250.22 in attorneys' fees calculated above to the $3,588.44 in costs and expenses yields a total fee award of $101,838.66.

Accordingly,

IT IS ORDERED:

1. Plaintiffs' motion for attorneys' fees and costs (Filing 81) is granted in part as follows: Pursuant to Neb. Rev. Stat. § 44-359, the plaintiffs are hereby awarded total attorneys' fees, costs, and expenses against the defendant in the amount of $101,838.66.

2. Judgment shall be entered by separate document.

DATED this 11th day of March, 2013.

BY THE COURT:
s/ *Richard G. Kopf*
Senior United States District Judge

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.